JUDGE STEIN

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**07 CIV 9280**

-------------------------------------------------------------------X

VALERIA CASTILLO MENDOZA,

**CASE NUMBER:**

Plaintiff,

**COMPLAINT
AND DEMAND
FOR JURY TRIAL**

-against-

ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON
& JOHNSON, and JOHNSON & JOHNSON
PHARMACEUTICAL RESEARCH & DEVELOPMENT,
L.L.C., f/k/a R.W. JOHNSON PHARMACEUTICAL
RESEARCH INSTITUTE,

OCT 16 2007
U.S.D.C.
CASHIERS

Defendants.

-------------------------------------------------------------------X

Plaintiff, by her attorneys, **DOUGLAS AND LONDON, P.C.**, on behalf of herself

individually, upon information and belief, at all times hereinafter mentioned, alleges as follows:

## JURISDICTION

1.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, because

the amount in controversy as to the Plaintiff exceeds $75,000.00, exclusive of interest and costs,

and because Defendants are incorporated and have their principal places of business in states

other than the state in which the named individual and representative Plaintiff resides.

## NATURE OF THE CASE

2.     This action is brought on behalf of Plaintiff, VALERIA CASTILLO MENDOZA,

who used the Ortho Evra norelgestromin/ethinyl estradiol transdermal system (hereinafter

collectively referred to as either "Ortho Evra" or "the Patch").

3.      Defendants, ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C., f/k/a R.W. JOHNSON PHARMACEUTICAL RESEARCH INSTITUTE (hereinafter collectively referred to as "Defendants") designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed the Patch for use as a transdermal birth control.

4.      When warning of the Patch's safety and risks, Defendants negligently and improperly relied on safety and risk information derived from studies of birth control pills, stating "[t]he following information is derived primarily from studies of birth control pills.  Since ORTHO EVRA® contains hormones similar to those found in birth control pills, it is *expected* to be associated with similar risks" (package insert, revised May 2003) (emphasis added).

5.      Defendants negligently and improperly failed to perform sufficient tests, if any, on women using and/or wearing the Patch during clinical trials, forcing Plaintiff, and her physicians, hospitals, and the FDA, to rely on safety information that applies to oral birth control medication, hereinafter referred to as "the Pill," which does not entirely and/or necessarily apply to the Patch whatsoever.

6.      Defendants were negligent in failing to adhere to and/or take into consideration warnings from the FDA, prior to FDA approval of Ortho Evra, who determined, inter alia, that blood clots could be a problem with the Patch.

7.      Defendants carelessly and negligently and/or intentionally misrepresented the estimates of mortality rates from use of the Patch through their own admission that data derived from studies were primarily obtained with oral contraceptives, and is merely "*likely* to apply to Ortho Evra as well," (package insert, revised May 2003) (emphasis added).

8.     Defendants were negligent in failing to conduct sufficient tests that would allow them to appropriately determine and report the safety and risks associated with the intake of hormones contained in Ortho Evra through a transdermal system versus an oral route, such as the Pill.

9.     Defendants falsely and fraudulently represented, through all vehicles of sales, marketing, advertising and promotion to the medical and healthcare community, and to the Plaintiff, the FDA, and the public in general that said drug, Ortho Evra, was as safe as the Pill, when in fact Defendants were aware that "[t]here is *no epidemiologic data available to determine whether safety and efficacy with the transdermal route of administration would be different than the oral route*," (package insert, revised May 2003) (emphasis added).

10.    Yet, on November 10, 2005 the FDA approved updated labeling for the Ortho Evra contraceptive patch to warn healthcare providers and patients that the Patch exposes women to about 60 percent more total estrogen in their blood than if they were taking a typical birth control pill containing 35 micrograms of estrogen.

11.    Defendants falsely and fraudulently represented, through all vehicles of sales, marketing, advertising and promotion to the medical and healthcare community, and to the Plaintiff, the FDA, and the public in general that the risk of venous thromboembolism was the same as that of the Pill, when in fact Defendants knew that "[i]t is *unknown* if the risk of venous thromboembolism with Ortho Evra use is different than with use of combination oral contraceptives," (package insert revised: May 2003) (emphasis added).

12.    As a result of the defective nature of the Patch, those persons who use and/or used and relied on the Patch have suffered and/or are at a greatly increased risk of serious and dangerous side effects including but not limited to stroke, and/or transient ischemic attack

("TIA"), and/or embolisms, and/or blood clots, and/or heart attack, and/or coma, and/or death, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, a future of high risk pregnancies, any and all life complications created by Plaintiff's inability to use any form of prescription contraception for the duration of her life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above named health consequences.

13.     Plaintiff herein has sustained the above health consequences due to her use of the Patch.

14.     Defendants concealed their knowledge of the defects in their products from the Plaintiff, and her physicians, hospitals, pharmacists, the FDA, and the public in general.

15.     Consequently, Plaintiff seeks compensatory damages as a result of her use of the Patch, which has caused, may cause, and/or will continue to cause Plaintiff to suffer and/or be at greatly increased risk of serious and dangerous side effects including but not limited to stroke, and/or transient ischemic attack ("TIA"), and/or embolisms, and/or blood clots, and/or heart attack, and/or coma, and/or death, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, a future of high risk pregnancies, any and all life complications created by Plaintiff's inability to use any form of prescription contraception for the duration of her life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above named health consequences.

**PARTY PLAINTIFF**

16.    Plaintiff, VALERIA CASTILLO MENDOZA, is a citizen of the United States of America, and is a resident of the State of New York.

17.    Plaintiff, VALERIA CASTILLO MENDOZA, was born on October 26, 1985.

18.    Plaintiff, VALERIA CASTILLO MENDOZA, first began using the Patch in or about October, 2003, and used the Patch up until approximately June, 2005.

19.    As result of using Defendants' Patch, Plaintiff, VALERIA CASTILLO MENDOZA, was caused to suffer deep vein thrombosis on or about June 24, 2005 and was caused to sustain severe and permanent personal injuries, pain, suffering, and emotional distress.

20.    The deep vein thrombosis sustained by Plaintiff, VALERIA CASTILLO MENDOZA, was caused by Defendants' Patch.

**PARTY DEFENDANTS**

21.    Upon    information    and    belief,    Defendant,    ORTHO-McNEIL PHARMACEUTICAL, INC., is incorporated in the State of Delaware, with its principle place of business in Raritan, New Jersey.

22.    Upon    information    and    belief,    Defendant,    ORTHO-McNEIL PHARMACEUTICAL, INC., has transacted and conducted business in the state of New York.

23.    Upon    information    and    belief,    Defendant,    ORTHO-McNEIL PHARMACEUTICAL, INC., has derived substantial revenue from goods and products used in the state of New York..

24.    Upon    information    and    belief,    Defendant,    ORTHO-McNEIL PHARMACEUTICAL, INC., expected or should have expected their acts to have consequences within the state of New York, and derived substantial revenue from interstate commerce.

25.     Upon information and belief, and at all relevant times, Defendant, ORTHO-MCNEIL was in the business of and did design, research, manufacture, test, advertise, promote, market, sell, and distribute the Patch for use as a transdermal birth control medication.

26.     Upon information and belief, Defendant, JOHNSON & JOHNSON, is incorporated in the State of New Jersey, with its principle place of business in New Brunswick, New Jersey.

27.     Upon information and belief, Defendant, JOHNSON & JOHNSON, has transacted and conducted business in the state of New York.

28.     Upon information and belief, Defendant, JOHNSON & JOHNSON, has derived substantial revenue from goods and products used in the state of New York.

29.     Upon information and belief, Defendant, JOHNSON & JOHNSON, expected or should have expected their acts to have consequences within the state of New York, and derived substantial revenue from interstate commerce.

30.     Upon information and belief, and at all relevant times, Defendant, JOHNSON & JOHNSON was in the business of and did design, research, manufacture, test, advertise, promote, market, sell, and distribute the Patch for use as a transdermal birth control medication.

31.     Upon information and belief, Defendant, JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C., is incorporated in the State of New Jersey, with its principle place of business in Raritan, New Jersey.

32.     Upon information and belief, Defendant, JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C., has transacted and conducted business in the state of New York.

33.     Upon   information   and   belief,   Defendant,   JOHNSON   &   JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C., has derived substantial revenue from goods and products used in the state of New York.

34.     Upon   information   and   belief,   Defendant,   JOHNSON   &   JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C., expected or should have expected their acts to have consequences within the state of New York, and derived substantial revenue from interstate commerce.

35.     Upon information and belief, and at all relevant times, Defendant, JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C., was in the business of and did design, research, manufacture, test, advertise, promote, market, sell, and distribute the Patch for use as a transdermal birth control medication.

## FACTUAL BACKGROUND

36.     At all relevant times, Defendants were in the business of and did design, research, manufacture, test, advertise, promote, market, sell, distribute, and/or have recently acquired the Defendants who have designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed the Patch for use as a transdermal birth control medication.

37.     Upon    information    and    belief,    Defendant,    ORTHO-McNEIL PHARMACEUTICAL, INC., was formed by a 1993 merger of Ortho Pharmaceutical Corporation and McNeil Pharmaceutical.

38.     Ortho Pharmaceutical Corporation was acquired or created by Johnson & Johnson in or about 1940.

39.     Johnson & Johnson acquired McNeil Laboratories, Inc. in 1959.

40.     Upon     information     and     belief,     Defendants,     ORTHO-McNEIL

PHARMACEUTICAL, INC. and JOHNSON & JOHNSON, prior to the 1993 merger have been

involved in the research and development of forms of contraception since 1931 and hormone

combination contraception as early as 1957.

41.     Upon     information     and     belief,     Defendant,     ORTHO-McNEIL,

PHARMACEUTICAL, INC. is a wholly owned subsidiary of Defendant, JOHNSON &

JOHNSON.

42.     Upon     information     and     belief,     Defendant,     JOHNSON     &     JOHNSON

PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C., was formed by a 2001 merger

of The Janssen Research Foundation and the R.W. Johnson Pharmaceutical Research Institute.

43.     Upon information and belief, in 2002, Defendants had sales in the United States

from their Pharmaceutical Segment of Business, which includes the Patch, in excess of eleven

billion dollars ($11,000,000,000.00).

44.     Upon information and belief, in 2003, Defendants had sales in the United States

from their Pharmaceutical Segment of Business, which includes the Patch, in excess of thirteen

billion dollars ($13,000,000,000.00).

45.     Upon information and belief, in 2004, Defendants had sales in the United States

from their Pharmaceutical Segment of Business, which includes the Patch, in excess of fourteen

billion dollars ($14,000,000,000.00).

46.     Upon     information     and     belief,     Defendant,     ORTHO-McNEIL

PHARMACEUTICAL, INC. is the world's leading manufacturer of prescription contraceptives.

47.    Upon    information    and    belief,    Defendant,    ORTHO-McNEIL PHARMACEUTICAL, INC., is the current market leader in oral and Patch contraceptive products.

48.    Defendants utilized direct-to-consumer adverting to market, promote, and/or advertise the Patch.

49.    Upon information and belief, Defendants' Patch has become one of the most popular forms of birth control and the fastest growing hormonal contraceptive in the United States since 2003.

50.    Defendants' Patch received approval from The Food and Drug Administration (hereinafter referred to as "FDA") as a drug on or about November 20, 2001.

51.    Defendants failed to appropriately and adequately warn Plaintiff, and her physicians, hospitals, and the FDA, of the serious and dangerous risks involved in using Defendants' Patch which include but are not limited to stroke, and/or transient ischemic attack ("TIA"), and/or embolisms, and/or blood clots, and/or heart attack, and/or coma, and/or death, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, a future of high risk pregnancies, any and all life complications created by Plaintiff's inability to use any form of prescription contraception for the duration of her life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above named health consequences.

52.    Upon information and belief, Defendants misrepresented the known risks inherent in the use of the Ortho Evra transdermal system.

53.    Indeed, as recently as November 10, 2005 the FDA approved updated labeling for the Ortho Evra contraceptive patch to warn healthcare providers and patients that the Patch exposes women to about 60 percent more total estrogen in their blood than if they were taking a typical birth control pill containing 35 micrograms of estrogen – information the Defendants never disclosed before this mandated warning change by the FDA.

54.    Defendants knew, or should have known, of the above-mentioned risks based upon the state of knowledge of the Patch as it existed at that time, and upon generally accepted medical and research standards and principles.

55.    Defendants made certain claims which were distributed and circulated to the medical and healthcare professions, and to the general public, stating that the Patch was as safe as birth control pills.

56.    Defendants knew, or should have known, that there is no epidemiologic data available to determine whether safety and efficacy with the transdermal route of administration would be different than the oral route.

57.    Defendants were careless and negligent in the manufacturing, testing, selling, distribution, merchandising, advertising, marketing, promotion, compounding, packaging, fabrication, warning, analyzing, marketing, and recommendation of the Patch.

58.    By reason of the foregoing, Plaintiff has developed and/or is at extremely high risk of serious and dangerous side effects including but not limited to stroke, and/or transient ischemic attack ("TIA"), and/or embolisms, and/or blood clots, and/or heart attack, and/or coma, and/or death, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, a future of high risk pregnancies, any and all life complications created by Plaintiff's inability to use any

form of prescription contraception for the duration of her life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above named health consequences.

59.    Plaintiff has endured and continues to suffer the mental anguish and psychological trauma of living with the knowledge that she has and/or may suffer serious and dangerous side effects including but not limited to stroke, and/or transient ischemic attack ("TIA"), and/or embolisms, and/or blood clots, and/or heart attack, and/or coma, and/or death, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, a future of high risk pregnancies, any and all life complications created by Plaintiff's inability to use any form of prescription contraception for the duration of her life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above named health consequences.

60.    By reason of the foregoing, Plaintiff has been severely and permanently injured, and will require more constant and continuous medical monitoring and treatment than prior to her use of Defendants' Ortho Evra Patches.

**FIRST CAUSE OF ACTION
AS AGAINST THE DEFENDANTS
(NEGLIGENCE)**

61.    Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

62.     Defendants had a duty to exercise reasonable care in the designing, researching, manufacturing, marketing, supplying, promoting, packaging, sale and/or distribution of the Patch into the stream of commerce, including a duty to assure that the product would not cause users to suffer unreasonable, dangerous side effects.

63.     Defendants failed to exercise ordinary care in the designing, researching, manufacturing, marketing, supplying, promoting, packaging, sale, testing, quality assurance, quality control, and/or distribution of the Patch into interstate commerce in that Defendants knew or should have known that using the Patch created a high risk of unreasonable, dangerous side effects, including but not limited to stroke, and/or transient ischemic attack ("TIA"), and/or embolisms, and/or blood clots, and/or heart attack, and/or coma, and/or death, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, a future of high risk pregnancies, any and all life complications created by Plaintiff's inability to use any form of prescription contraception for the duration of her life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above named health consequences.

64.     The negligence of the Defendants, their agents, servants, and/or employees, included but was not limited to the following acts and/or omissions:

> (a)     Manufacturing, producing, promoting, formulating, creating, and/or designing the Patch without thoroughly testing it;
>
> (b)     Manufacturing, producing, promoting, formulating, creating, and/or designing the Patch without adequately testing it;
>
> (c)     Not conducting sufficient testing programs to determine whether or not the aforesaid Patch was safe for use; in that Defendants herein knew or should have known that the Patch was unsafe and unfit for use by reason of the dangers to its users;
>
> (d)     Selling the Patch without making proper and sufficient tests to

12

determine the dangers to its users;

(e)     Negligently failing to adequately and correctly warn the Plaintiff, the public, the medical and healthcare profession, and the FDA of the dangers of the Patch;

(f)     Failing to provide adequate instructions regarding safety precautions to be observed by users, handlers, and persons who would reasonably and foreseeably come into contact with, and more particularly, use, the Patch;

(g)     Failing to test the Patch and/or failing to adequately, sufficiently and properly test the Patch.

(h)     Negligently advertising and recommending the use of the aforesaid Patch without sufficient knowledge as to its dangerous propensities;

(i)     Negligently representing that said Patch was safe for use for its intended purpose, when, in fact, it was unsafe;

(j)     Negligently representing that the Patch had equivalent safety and efficacy as other forms of birth control/contraception;

(k)     Negligently designing the Patch in a manner which was dangerous to its users;

(l)     Negligently manufacturing the Patch in a manner which was dangerous to its users;

(m)     Negligently producing the Patch in a manner which was dangerous to its users;

(n)     Negligently assembling the Patch in a manner which was dangerous to its users;

(o)     Concealing information concerning FDA warnings from the Plaintiff in knowing that the Patch was unsafe, dangerous, and/or non-conforming with FDA regulations;

(p)     Improperly concealing and/or misrepresenting information from the Plaintiff, healthcare professionals, and/or the FDA, concerning the severity of risks and dangers of the Patch compared to other forms of contraception.

65.    Defendants under-reported, underestimated and downplayed the serious dangers of the Patch.

66.    Defendants negligently compared the safety risk and/or dangers of the Patch with other forms of contraception, including but not limited to oral contraception, namely, "the Pill."

67.    Defendants were negligent in the designing, researching, supplying, manufacturing, promoting, packaging, distributing, testing, advertising, warning, marketing and sale of the Patch in that they:

(a)    Failed to use due care in designing and manufacturing the Patch so as to avoid the aforementioned risks to individuals when the Patch was used for contraceptive purposes;

(b)    Failed to accompany their product with proper and/or accurate warnings regarding all possible adverse side effects associated with the use of the Patch;

(c)    Failed to accompany their product with proper warnings regarding all possible adverse side effects concerning the failure and/or malfunction of the Patch;

(d)    Failed to accompany their product with accurate warnings regarding the risks of all possible adverse side effects concerning the Patch;

(e)    Failed to warn Plaintiff of the severity and duration of such adverse effects, as the warnings given did not accurately reflect the symptoms, or severity of the side effects;

(b)    Failed to conduct adequate testing, including pre-clinical and clinical testing and post-marketing surveillance to determine the safety of the Patch;

(g)    Failed to warn Plaintiff, prior to actively encouraging the sale of the Patch, either directly or indirectly, orally or in writing, about the need for more comprehensive, more regular medical monitoring than usual to ensure early discovery of potentially serious side effects;

(h)    Were otherwise careless and/or negligent.

68.    Despite the fact that Defendants knew or should have known that the Patch caused unreasonably dangerous side effects, Defendants continued and continue to market, manufacture, distribute and/or sell the Patch to consumers, including the Plaintiff.

69.    Defendants knew or should have known that consumers such as the Plaintiff would foreseeably suffer injury as a result of Defendants' failure to exercise ordinary care, as set forth above.

70.    Defendants' negligence was the proximate cause of Plaintiff's injuries, harm and economic loss which she suffered and/or will continue to suffer.

71.    As a result of the foregoing acts and omissions, the Plaintiff was and/or still is caused to suffer and/or is at a greatly increased risk of serious and dangerous side effects including but not limited to stroke, and/or transient ischemic attack ("TIA"), and/or embolisms, and/or blood clots, and/or heart attack, and/or coma, and/or death, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, a future of high risk pregnancies, any and all life complications created by Plaintiff's inability to use any form of prescription contraception for the duration of her life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above named health consequences.

72.    As a result of the foregoing acts and omissions, the Plaintiff requires and will require health care and services, and did incur medical, health, incidental and related expenses. Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

73.    By reason of the foregoing, Plaintiff has been damaged as against the Defendants in the sum of TEN MILLION DOLLARS ($10,000,000.00).

## SECOND CAUSE OF ACTION
## AS AGAINST THE DEFENDANTS
## (STRICT PRODUCTS LIABILITY)

74.     Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

75.     At all times herein mentioned, the Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, distributed, and/or have recently acquired the Defendants who have designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed the Patch as hereinabove described that was used by the Plaintiff.

76.     That the Patch was expected to and did reach the usual consumers, handlers, and persons coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by the Defendants.

77.     At those times, the Patch was in an unsafe, defective, and inherently dangerous condition, which was dangerous to users, and in particular, the Plaintiff herein.

78.     The Patch designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants was defective in design or formulation in that, when it left the hands of the manufacturer and/or suppliers, the foreseeable risks exceeded the benefits associated with the design or formulation of the Patch.

79.     The Patch designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants was defective in design and/or formulation, in that, when it left the hands of the Defendants manufacturers and/or suppliers, it was unreasonably dangerous, and it was more dangerous than an ordinary consumer would expect.

80.    At all times herein mentioned, the Patch was in a defective condition and unsafe, and Defendants knew or had reason to know that said product was defective and unsafe, especially when used in the form and manner as provided by the Defendants.

81.    Defendants knew, or should have known that at all times herein mentioned its Patch was in a defective condition, and was and is inherently dangerous and unsafe.

82.    At the time of the Plaintiff's use of the Patch, the Patch was being used for the purposes and in a manner normally intended, namely for birth control and/or regulation of menses.

83.    Defendants with this knowledge voluntarily designed its Patch in a dangerous condition for use by the public, and in particular the Plaintiff.

84.    Defendants had a duty to create a product that was not unreasonably dangerous for its normal, intended use.

85.    Defendants created a product unreasonably dangerous for its normal, intended use.

86.    The Patch designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants was manufactured defectively in that said Patch left the hands of Defendants in a defective condition and was unreasonably dangerous to its intended users.

87.    The Patch designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants reached their intended users in the same defective and unreasonably dangerous condition in which the Defendants' Patch was manufactured.

88.    Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed a defective product which created an unreasonable risk to the

17

health of consumers and to the Plaintiff in particular, and Defendants are therefore strictly liable for the injuries sustained by the Plaintiff.

89.    The Plaintiff could not by the exercise of reasonable care, have discovered the Patch's defects herein mentioned and perceived its danger.

90.    The Patch designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants was defective due to inadequate warnings or instructions as the Defendants knew or should have known that the product created a risk of serious and dangerous side effects including but not limited to stroke, and/or transient ischemic attack ("TIA"), and/or embolisms, and/or blood clots, and/or heart attack, and/or coma, and/or death, as well as other severe and personal injuries which are permanent and lasting in nature and the Defendants failed to adequately warn of said risk.

91.    The Patch designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants was defective due to inadequate warnings and/or inadequate testing.

92.    The Patch designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants was defective due to inadequate post-marketing surveillance and/or warnings because, after Defendants knew or should have known of the risks of serious side effects including but not limited to stroke, transient ischemic attack ("TIA"), embolisms, blood clots, heart attacks, coma, and death, as well as other severe and permanent health consequences from the Patch, they failed to provide adequate warnings to users or consumers of the product, and continued to improperly advertise, market and/or promote their product, the Patch.

93.     By reason of the foregoing, the Defendants have become strictly liable in tort to the Plaintiff for the manufacturing, marketing, promoting, distribution, and selling of a defective product, the Patch.

94.     Defendants' defective design, manufacturing defect, and inadequate warnings of the Patch were acts that amount to willful, wanton, and/or reckless conduct by Defendants.

95.     That said defects in Defendants' Patch were a substantial factor in causing Plaintiff's injuries.

96.     As a result of the foregoing acts and omissions, the Plaintiff was and still is caused to suffer and/or is at a greatly increased risk of serious and dangerous side effects including but not limited to stroke, and/or transient ischemic attack ("TIA"), and/or embolisms, and/or blood clots, and/or heart attack, and/or coma, and/or death, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, a future of high risk pregnancies, any and all life complications created by Plaintiff's inability to use any form of prescription contraception for the duration of their lives, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above named health consequences .

97.     As a result of the foregoing acts and omissions the Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental and related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

98.     By reason of the foregoing, Plaintiff has been damaged as against the Defendants in the sum of TEN MILLION DOLLARS ($10,000,000.00).

## THIRD CAUSE OF ACTION
## AS AGAINST THE DEFENDANTS
## (BREACH OF EXPRESS WARRANTY)

99.     Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

100.    Defendants expressly warranted that the Patch was safe and well accepted by users.

101.    The Patch does not conform to these express representations because the Patch is not safe and has numerous serious side effects, many of which were not accurately warned about by Defendants.  As a direct and proximate result of the breach of said warranties, Plaintiff suffered and/or will continue to suffer severe and permanent personal injuries, harm and economic loss.

102.    Plaintiff did rely on the express warranties of the Defendants herein.

103.    Members of the medical community, including physicians and other healthcare professionals, relied upon the representations and warranties of the Defendants for use of the Patch in recommending, prescribing, and/or dispensing the Patch.

104.    The Defendants herein breached the aforesaid express warranties, as their Patch was defective.

105.    Defendants expressly represented to Plaintiff, her physicians, healthcare providers, and/or the FDA that the Patch was safe and fit for use for the purposes intended, that it was of merchantable quality, that it did not produce any dangerous side effects in excess of those risks associated with the Pill, that the side effects it did produce were accurately reflected in the warnings and that it was adequately tested and fit for its intended use.

106.    Defendants knew or should have known that, in fact, said representations and warranties were false, misleading and untrue in that the Patch was not safe and fit for the use intended, and, in fact, produced serious injuries to the users that were not accurately identified and represented by Defendants.

107.    As a result of the foregoing acts and/or omissions the Plaintiff, was and still is caused to suffer and/or is at a greatly increased risk of serious and dangerous side effects including but not limited to stroke, and/or transient ischemic attack ("TIA"), and/or embolisms, and/or blood clots, and/or heart attack, and/or coma, and/or death, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, a future of high risk pregnancies, any and all life complications created by Plaintiff's inability to use any form of prescription contraception for the duration of her life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above named health consequences.

108.    As a result of the foregoing acts and omissions the Plaintiff requires and/or will require healthcare and services and did incur medical, psychiatric, health, incidental and related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

109.    By reason of the foregoing, Plaintiff has been damaged as against the Defendants in the sum of TEN MILLION DOLLARS ($10,000,000.00).

## FOURTH CAUSE OF ACTION
## AS AGAINST THE DEFENDANTS
## (BREACH OF IMPLIED WARRANTIES)

110.    Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

111.    At all times herein mentioned, the Defendants manufactured, compounded, portrayed, distributed, recommended, merchandized, advertised, promoted and sold the Patch and/or have recently acquired the Defendants who have manufactured, compounded, portrayed, distributed, recommended, merchandized, advertised, promoted and sold the Patch, for use in contraception.

112.    At the time Defendants marketed, sold, and distributed the Patch for use by Plaintiff, Defendants knew of the use for which the Patch was intended and impliedly warranted the product to be of merchantable quality and safe and fit for such use.

113.    The Defendants impliedly represented and warranted to the users of the Patch and their physicians, healthcare providers, and/or the FDA that the Patch was safe and of merchantable quality and fit for the ordinary purpose for which said product was to be used.

114.    That said representations and warranties aforementioned were false, misleading, and inaccurate in that the Patch was unsafe, unreasonably dangerous, improper, not of merchantable quality, and defective.

115.    Plaintiff, and/or members of the medical community and/or healthcare professionals did rely on said implied warranty of merchantability of fitness for a particular use and purpose.

116.    Plaintiff and her physicians and healthcare professionals reasonably relied upon the skill and judgment of Defendants as to whether the Patch was of merchantable quality and safe and fit for its intended use.

117.    The Patch was injected into the stream of commerce by the Defendants in a defective, unsafe, and inherently dangerous condition and the products and materials were expected to and did reach users, handlers, and persons coming into contact with said products without substantial change in the condition in which they were sold.

118.    The Defendants herein breached the aforesaid implied warranties, as their Patch was not fit for its intended purposes and uses.

119.    As a result of the foregoing acts and omissions, the Plaintiff was and/or still is caused to suffer and/or is at a greatly increased risk of serious and dangerous side effects including but not limited to stroke, and/or transient ischemic attack ("TIA"), and/or embolisms, and/or blood clots, and/or heart attack, and/or coma, and/or death, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, a future of high risk pregnancies, any and all life complications created by Plaintiff's inability to use any form of prescription contraception for the duration of her life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above named health consequences.

120.    As a result of the foregoing acts and omissions the Plaintiff requires and will require healthcare and services and did incur medical, health, incidental and related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

121.    By reason of the foregoing, Plaintiff has been damaged as against the Defendants in the sum of TEN MILLION DOLLARS ($10,000,000.00).

## FIFTH CAUSE OF ACTION AS
## AGAINST THE DEFENDANTS
## (FRAUDULENT MISREPRESENTATION)

122.    Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

123.    The Defendants falsely and fraudulently represented to the medical and healthcare community, and to the Plaintiff, and/or the FDA, and the public in general, that said product, the Patch, had been tested and was found to be safe and/or effective for contraceptive purposes.

124.    That representations made by Defendants were, in fact, false.

125.    When said representations were made by Defendants, they knew those representations to be false and it willfully, wantonly and recklessly disregarded whether the representations were true.

126.    These representations were made by said Defendants with the intent of defrauding and deceiving the Plaintiff, the public in general, and the medical and healthcare community in particular, and were made with the intent of inducing the public in general, and the medical and healthcare community in particular, to recommend, prescribe, dispense and/or purchase said product, the Patch, for use as a means of birth control, all of which evinced a callous, reckless, willful, depraved indifference to the health, safety and welfare of the Plaintiff herein.

127.   At the time the aforesaid representations were made by the Defendants and, at the time the Plaintiff used the Patch, the Plaintiff was unaware of the falsity of said representations and reasonably believed them to be true.

128.   In reliance upon said representations, the Plaintiff was induced to and did use the Patch, thereby sustaining severe and permanent personal injuries, and/or being at an increased risk of sustaining severe and permanent personal injuries in the future.

129.   Said Defendants knew and were aware or should have been aware that the Patch had not been sufficiently tested, was defective in nature, and/or that it lacked adequate and/or sufficient warnings.

130.   Defendants knew or should have known that the Patch had a potential to, could, and would cause severe and grievous injury to the users of said product, and that it was inherently dangerous in a manner that exceeded any purported, inaccurate, and/or down-played warnings.

131.   Defendants brought the Patch to the market, and acted fraudulently, wantonly and maliciously to the detriment of the Plaintiff.

132.   As a result of the foregoing acts and omissions, the Plaintiff was and still is caused to suffer and/or is at a greatly increased risk of serious and dangerous side effects including but not limited to stroke, and/or transient ischemic attack ("TIA"), and/or embolisms, and/or blood clots, and/or heart attack, and/or coma, and/or death, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, a future of high risk pregnancies, any and all life complications created by Plaintiff's inability to use any form of prescription contraception for

the duration of her life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above named health consequences.

133.    As a result of the foregoing acts and omissions the Plaintiff requires and/or will require health care and services, and did incur medical, health, incidental and related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

134.    By reason of the foregoing, Plaintiff has been damaged as against the Defendants in the sum of TEN MILLION DOLLARS ($10,000,000.00).

## SIXTH CAUSE OF ACTION AS AGAINST THE DEFENDANTS (FRAUDULENT CONCEALMENT)

135.    Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

136.    At all times during the course of dealing between Defendants and Plaintiff, and/or Plaintiff's healthcare providers, and/or the FDA, Defendants misrepresented the safety of the Patch for its intended use.

137.    At all times during the course of dealing between Defendants and Plaintiff, and/or Plaintiff's healthcare providers, and/or the FDA, Defendants misrepresented the levels of estrogen delivered by the Patch.

138.    Defendants knew or were reckless in not knowing that its representations were false.

139.    In representations to Plaintiff, and/or Plaintiff's healthcare providers, and/or the FDA, Defendants fraudulently concealed and intentionally omitted the following material information:

(a)    that the Patch was not as safe as other forms of contraception;

(b)    that the risks of adverse events with the Patch were higher than those with other forms of birth control, including but not limited to oral contraception;

(c)    that the risks of adverse events with the Patch were not adequately tested and/or known by Defendants;

(d)    that Defendants were aware of dangers in the Patch, in addition to and above and beyond those associated with oral birth control methods;

(e)    that the Patch was defective, and that it caused dangerous side effects, including but not limited to higher incidence of stroke, transient ischemic attack ("TIA"), embolisms, blood clots, heart attacks, coma, and death, as well as other severe and permanent health consequences, in a much more and significant rate than other forms of birth control, including but not limited to oral birth control;

(f)    that patients needed to be monitored more regularly than normal while using the Patch;

(g)    that the Patch was manufactured negligently;

(h)    that the Patch was manufactured defectively;

(i)    that the Patch was manufactured improperly;

(j)    that the Patch was designed negligently;

(k)    that the Patch was designed defectively; and

(l)    that the Patch was designed improperly.

(m)    that the Patch delivered safe levels of estrogen

(n)    that the Patch delivered the same, or close to the same levels of estrogen as the Pill

140.    Defendants were under a duty to disclose to Plaintiff, and her physicians, hospitals, healthcare providers, and/or the FDA the defective nature of the Patch, including but not limited to the heightened risks of a transdermal route of administration of the hormones contained in Ortho Evra.

141.    Defendants had sole access to material facts concerning the defective nature of the product and its propensity to cause serious and dangerous side effects, and hence, cause damage to persons who used the Patch, including the Plaintiff, in particular.

142.    Defendants' concealment and omissions of material facts concerning, inter alia, the safety of the Patch was made purposefully, willfully, wantonly, and/or recklessly, to mislead Plaintiff, and her physicians, hospitals and healthcare providers into reliance, continued use of the Patch, and actions thereon, and to cause them to purchase, prescribe, and/or dispense the Patch and/or use the product.

143.    Defendants knew that Plaintiff, and her physicians, hospitals, healthcare providers, and/or the FDA had no way to determine the truth behind Defendants' concealment and omissions, and that these included material omissions of facts surrounding the Patch, as set forth herein.

144.    Plaintiff, as well as her doctors, healthcare providers, and/or hospitals reasonably relied on facts revealed which negligently, fraudulently and/or purposefully did not include facts that were concealed and/or omitted by Defendants.

145.    As a result of the foregoing acts and omissions the Plaintiff was and still is caused to suffer and/or is at a greatly increased risk of serious and dangerous side effects including but not limited to stroke, and/or transient ischemic attack ("TIA"), and/or embolisms, and/or blood clots, and/or heart attack, and/or coma, and/or death, as well as other severe and personal injuries

which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, a future of high risk pregnancies, any and all life complications created by Plaintiff's inability to use any form of prescription contraception for the duration of her life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above named health consequences.

146.    As a result of the foregoing acts and omissions the Plaintiff requires and will require healthcare and services and did incur medical, health, incidental and related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

147.    By reason of the foregoing, Plaintiff has been damaged as against the Defendants in the sum of TEN MILLION DOLLARS ($10,000,000.00).

**SEVENTH CAUSE OF ACTION AS**
**AGAINST THE DEFENDANTS**
**(NEGLIGENT MISREPRESENTATION)**

148.    Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

149.    Defendants had a duty to represent to the medical and healthcare community, and to the Plaintiff, the FDA and the public in general that said product, the Patch, had been tested and found to be safe and effective for birth control.

150.    The representations made by Defendants were, in fact, false.

151.    Defendants failed to exercise ordinary care in the representation of the Patch, while involved in its manufacture, sale, testing, quality assurance, quality control, and/or

distribution of said product into interstate commerce in that Defendants negligently misrepresented the Patch's high risk of unreasonable, dangerous side effects.

152.    Defendants breached their duty in representing the Patch's serious side effects to the medical and healthcare community, to the Plaintiff, the FDA and the public in general.

153.    As a result of the negligent misrepresentations of the Defendants set forth hereinabove, said Defendants knew and were aware or should have known that the Patch had been insufficiently tested, and/or had not been tested, that it lacked adequate and/or accurate warnings, and/or that it created a high risk and/or higher than acceptable risk, and/or higher than reported/represented risks, as well as unreasonable, dangerous side effects, including but not limited to stroke, and/or transient ischemic attack ("TIA"), and/or embolisms, and/or blood clots, and/or heart attack, and/or coma, and/or death, as well as other severe and personal injuries which are permanent and lasting in nature.

154.    As a result of the foregoing acts and omissions the Plaintiff requires and will require health care and services and did incur medical, health, incidental and related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

155.    By reason of the foregoing, Plaintiff has been damaged as against the Defendants in the sum of TEN MILLION DOLLARS ($10,000,000.00).

## EIGHTH CAUSE OF ACTION AS AGAINST THE DEFENDANTS (FRAUD AND DECEIT)

156.    Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

157. Defendants conducted research and used the Patch as part of their research.

158. As a result of Defendants' research and testing, or lack thereof, Defendants blatantly and intentionally distributed false information, including but not limited to assuring the public, the Plaintiff, her doctors, hospitals, healthcare professionals, and/or the FDA that the Patch was safe for use as a means of providing birth control.

159. As a result of Defendants' research and testing, or lack thereof, Defendants intentionally omitted certain results of testing and research to the public, healthcare professionals, and/or the FDA, including the Plaintiff.

160. Defendants had a duty when disseminating information to the public to disseminate truthful information and a parallel duty not to deceive the public and the Plaintiff, as well as her respective healthcare providers and/or the FDA.

161. The information distributed to the public, the FDA, and the Plaintiff by Defendants, including but not limited to reports, press releases, advertising campaigns, television commercials, print ads, magazine ads, billboards, and all other commercial media contained material representations of fact and/or omissions.

162. The information distributed to the public, the FDA, and the Plaintiff by Defendants intentionally included representations that Defendants' Patch was safe for use as a form of birth control.

163. The information distributed to the public, the FDA, and the Plaintiff, by Defendants intentionally included representations that Defendants' Patch carried the same risks, hazards, and/or dangers as oral birth control, such as the Pill.

164.     The information distributed to the public, the FDA, and the Plaintiff, by Defendants intentionally included representations that Defendants' Patch delivered the same levels of estrogen as oral birth control, such as the Pill.

165.     The information distributed to the public, the FDA, and the Plaintiff, by Defendants intentionally included false representations that the Patch was not injurious to the health and/or safety of its intended users.

166.     The information distributed to the public, the FDA, and the Plaintiff, by Defendants intentionally included false representations that the Patch was as potentially injurious to the health and/or safety of its intended as oral forms of birth control, such as the Pill.

167.     These representations were all false and misleading.

168.     Upon information and belief, Defendants intentionally suppressed, ignored and disregarded test results not favorable to the Defendants, and results that demonstrated that the Patch was not safe as a means of contraception and/or was not as safe as other means of contraction, including but not limited to oral conception, such as the Pill.

169.     Defendants intentionally made material representations to the FDA and the public, including the medical profession, and the Plaintiff, regarding the safety of the Patch, specifically but not limited to the Patch not having dangerous and serious health and/or safety concerns.

170.     Defendants intentionally made material representations to the FDA and the public in general, including the medical profession, and the Plaintiff, regarding the safety of the Patch, specifically but not limited to the Patch being as safe a means of birth control as forms of oral contraception.

171. That it was the purpose of Defendants in making these representations to deceive and defraud the public, the FDA, and/or the Plaintiff, to gain the confidence of the public, healthcare professionals, the FDA, and/or the Plaintiff, to falsely ensure the quality and fitness for use of the Patch and induce the public, and/or the Plaintiff to purchase, request, dispense, prescribe, recommend, and/or continue to use the Patch.

172. Defendants made the aforementioned false claims and false representations with the intent of convincing the public, healthcare professionals, the FDA, and/or the Plaintiff that the Patch was fit and safe for use as birth control.

173. Defendants made the aforementioned false claims and false representations with the intent of convincing the public, healthcare professionals, the FDA, and/or the Plaintiff that the Patch was fit and safe for use as birth control and did not pose risks, dangers, or hazards above and beyond those identified and/or associated with oral contraceptives, such as the Pill.

174. That Defendants made claims and representations in its documents submitted to the FDA, to the public, to healthcare professionals, and the Plaintiff that the Patch did not present serious health and/or safety risks.

175. That Defendants made claims and representations in its documents submitted to the FDA, to the public, to healthcare professionals, and the Plaintiff that the Patch did not present health and/or safety risks greater than oral forms of contraception, such as the Pill.

176. That these representations and others made Defendants were false when made, and/or were made with a pretense of actual knowledge when knowledge did not actually exist, and/or were made recklessly and without regard to the actual facts.

177. That these representations and others, made by Defendants, were made with the intention of deceiving and defrauding the Plaintiff, including her respective healthcare

professionals and/or the FDA, and were made in order to induce the Plaintiff and/or her respective healthcare professionals to rely upon misrepresentations and caused the Plaintiff to purchase, use, rely on, request, dispense, recommend, and/or prescribe the Patch.

178.   That Defendants, recklessly and intentionally falsely represented the dangerous and serious health and/or safety concerns of the Patch to the public at large, the Plaintiff in particular, for the purpose of influencing the marketing of a product known to be dangerous and defective and/or not as safe as other alternatives, including oral contraception, such as the Pill.

179.   That Defendants willfully and intentionally failed to disclose the material facts regarding the dangerous and serious safety concerns of the Patch by concealing and suppressing material facts regarding the dangerous and serious health and/or safety concerns of the Patch.

180.   That Defendants willfully and intentionally failed to disclose the truth, failed to disclose material facts and made false representations with the purpose and design of deceiving and lulling the Plaintiff, as well as her respective healthcare professionals into a sense of security so that Plaintiff would rely on the representations and purchase, use and rely on the Patch and/or that her respective healthcare providers would dispense, prescribe, and/or recommend the same.

181.   Defendants, through her public relations efforts, which included but were not limited to the public statements and press releases, knew or should have known that the public, including the Plaintiff, as well as her respective healthcare professionals would rely upon the information being disseminated.

182.   Defendants utilized direct to consumer adverting to market, promote, and/or advertise the Patch.

183.   That the Plaintiff and/or her respective healthcare professionals did in fact rely on and believe the Defendants' representations to be true at the time they were made and relied

upon the representations as well as the superior knowledge of birth control, including but not limited to a transdermal birth control method, like the Patch, and were thereby induced to purchase, use and rely on Defendants' Patch.

184.    That at the time the representations were made, the Plaintiff and/or her respective healthcare providers did not know the truth with regard to the dangerous and serious health and/or safety concerns of the Patch.

185.    That the Plaintiff did not discover the true facts with respect to the dangerous and serious health and/or safety concerns, and the false representations of Defendants, nor could the Plaintiff with reasonable diligence have discovered the true facts.

186.    That had the Plaintiff known the true facts with respect to the dangerous and serious health and/or safety concerns of the Patch, Plaintiff would not have purchased, used and/or relied on Defendants' Patch.

187.    That the Defendants' aforementioned conduct constitutes fraud and deceit, and was committed and/or perpetrated willfully, wantonly and/or purposefully on the Plaintiff.

188.    As a result of the foregoing acts and omissions Plaintiff was caused to suffer and/or is at a greatly increased risk of serious and dangerous side effects including but not limited to stroke, and/or transient ischemic attack ("TIA"), and/or embolisms, and/or blood clots, and/or heart attack, and/or coma, and/or death, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, a future of high risk pregnancies, any and all life complications created by Plaintiff's inability to use any form of prescription contraception for the duration of her life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above named health consequences.

189.    As a result of the foregoing acts and omissions the Plaintiff requires and will require health care and services and did incur medical, health, incidental and related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

190.    By reason of the foregoing, Plaintiff has been damaged as against the Defendants in the sum of TEN MILLION DOLLARS ($10,000,000.00).

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against the Defendants on each of the above-referenced claims and Causes of Action and as follows:

1.    Awarding compensatory damages to Plaintiff for past and future damages, including but not limited to pain and suffering for severe and permanent personal injuries sustained by the Plaintiff, health care costs, medical monitoring, together with interest and costs as provided by law;

2.    Punitive and/or exemplary damages for the wanton, willful, fraudulent, reckless acts of the Defendants who demonstrated a complete disregard and reckless indifference for the safety and welfare of the general public and to the Plaintiff in an amount sufficient to punish Defendants and deter future similar conduct;

3.    Awarding Plaintiff reasonable attorneys fees;

4.    Awarding Plaintiff the costs of these proceedings; and

5.    Such other and further relief as this Court deems just and proper.

Dated: New York, New York
      October 12, 2007

DOUGLAS & LONDON, P.C.

By: _____
MICHAEL A. LONDON (ML-7510)
111 John Street, Suite 1400
New York, New York  10038
Ph:  (212) 566-7500
Fax: (212) 566-7501
Email: mlondon@douglasandlondon.com

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury as to all issues.

_____
MICHAEL A. LONDON (ML-7510)